THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALICIA VANDER WOUDE, | CASE NO. C21-0626-JCC |
| Plaintiff, | ORDER |
| v. | |
| SAFEWAY INC, | |
| Defendant. | |

This matter comes before the Court on Defendant's motion for summary judgment (Dkt. No. 9). Having thoroughly considered the parties' briefing and the relevant record, the Court DENIES Defendant's motion for the reasons explained below.

**I.    BACKGROUND**

On January 12, 2020, Plaintiff Alicia Vander Woude[1] parked her car and walked through the parking lot to Defendant's Safeway store in Mount Vernon, Washington. (Dkt. No. 10-3 at 6.) It was snowing when she arrived. (*Id.* at 7.) Conditions were very wet, and the parking lot contained "old snow" and "slush here and there." (Dkt. Nos. 14-16 at 12–13, Dkt. No. 14-17 at 11.) The parties have submitted still frames from store cameras,[2] which show Plaintiff walking

---

[1] Although Alicia and Louis Vander Woude both appear to be Plaintiffs, the Court refers to the former as "Plaintiff" and the latter as "Mr. Vander Woude" to avoid confusion.

[2] Plaintiff's video freeze-frames are not properly authenticated, with each image attached to a separate, apparently unsworn affidavit from her counsel who states, without professing to have

into the store across a carpeted foyer. (*See, e.g.,* Dkt. Nos. 11-1, 11-2.) As she moves toward the smooth interior floor, she appears to leave soggy footprints on the carpet. (Dkt. Nos. 11-1 at 4–5, 11-2 at 1–2.) Then, with her right foot planted on the juncture of the carpeting and the smooth floor, she takes a step with her left foot and loses her balance as soon as she begins to shift her weight onto that foot. (*See generally* Dkt. No. 11-2; Dkt. Nos. 14-8–14-10.) Her feet slide forward, and she falls over backward. (Dkt. Nos. 11-2 at 6–10, 14-9 at 2, 14-10 at 2.) The images show what look like streaks of dirt or grime extending from her sliding heels, though these marks could also be interpreted as shadows or reflections on the floor. (Dkt. No. 11-2 at 7–10.)

After falling, Plaintiff immediately called Mr. Vander Woude, who drove to the store where he found a parking lot containing "a mixture of slush and snow approximately two inches deep." (Dkt. No. 15 at 2.)[3]

Still shots from immediately before Plaintiff's fall show that the patch of floor where she slipped had a smooth, shiny surface that reflected the overhead light fixtures. (Dkt. Nos. 11-1 at 1–4, 14-3 at 2.) Plaintiff Louis Vander Woude states he has previously seen Defendant's employees buffing the floor to a high polish. (Dkt. No. 15 at 2.) Before Plaintiff entered the store, other patrons also left soggy footprints on the foyer carpet. (Dkt. No. 14-1 at 2, 14-3 at 2), including a bearded man who entered the store about 40 seconds before Plaintiff. (*See* Dkt. Nos. 14-7 at 2 (timestamp: 5:24:00.051 PM); 14-8 at 2 (timestamp: 5:24:38.819 PM).) Plaintiff states that the "floor was wet . . . and dangerous when I stepped on it," (Dkt. No. 14-15), but admits that she did not look at the floor before or after she fell and did not wipe her boots off on the

---

personal knowledge, that each image is a "true and correct copy" of a photo taken at a particular time. (*See, e.g.*, Dkt. No. 14-2 at 1.) However, Defendant does not object to this, and Plaintiff could indeed present these images in a form that would be admissible at trial. *See* Fed. R. Civ. P. 56(c)(2), (4); Fed. R. Evid. 901.

[3] Plaintiff's friend Enriqueta Rodea also states in her declaration that the parking lot had two to three inches of snow. (Dkt. No. 16 at 1.) Ms. Rodea's declaration is untimely. (*Id.*; *see also* Dkt. No. 12); W.D. Wash. Local Civ. R. 7(d)(3). However, Defendant does not ask the Court to strike this declaration, and in any event, striking it would not alter the Court's decision on this motion.

carpet. (Dkt. No. 10-3 at 10, 15.)

Images from right after Plaintiff's fall appear to show the feet of her brown boots soaked with moisture. (Dkt. Nos. 14-11 at 2, 14-12 at 2; *see also* 14-16 at 23 (employee testimony that boots looked wet because they were dark in patches).) Smudges of dirt are visible on the floor where Plaintiff slipped. (Dkt. No. 14-14 at 2.) But while the smudges were not there before Plaintiff's fall, the Court cannot see any liquid on the floor in either the "before" or "after" pictures, (*compare id.*, *with* Dkt. No. 14-4 at 2), which suggests that the image resolution may not be high enough to show any liquid there might have been at either time.

Defendant's Mount Vernon store had three persons in charge (PICs) whose duties included overseeing safety conditions in the store. (Dkt. Noa. 14-16 at 8.) The PICs supervise courtesy clerks to ensure that spills inside the store are marked with cones, cleaned up, and dried. (Dkt. No. 14-16 at 7–8.) Additionally, courtesy clerks take hourlong turns patrolling the store, including entryways and exits, looking for and cleaning up hazards. (Dkt. Nos. 14-16 at 9–10, 14-17 at 25–28.)

If it is raining outside, then the courtesy clerks "always" place warning cones outside of the store entry doors. (Dkt. No. 14-16 at 10.) Additionally, "if it's snowing . . . or . . . if there is a lot of snow being brought in or if it's raining heavily," store personnel put warning cones just inside the entryway and throughout the store "[j]ust to keep reminding people . . . that floors could be slippery." (*Id.* at 10–11 (additional cones are placed inside the entry if there are one to three inches of snow).) Courtesy clerks are trained to place outdoor cones whenever it is raining, but the record suggests that they do not place the additional indoor cones unless directed to do so by store management. (Dkt. No. 14-17 at 29–30.)

It is undisputed that there were no cones or cautionary markers inside the store entrance when Plaintiff fell. (*See generally* Dkt. No. 11-1.) And despite the testimony that cones were "always" outside the store if conditions were wet, there is no testimony from anyone who personally saw outdoor cones on the day Plaintiff fell. (*See generally* Dkt. Nos. 10-3, 14-16, 14-

17.) Defendant contends that one of the cones is visible in the camera images "just behind the glass panel with the red sign," (Dkt. No. 17 at 6 (citing Dkt. Nos. 11-1 at 5, 14-9 at 2)), but, as evident from the screenshot below, the vague yellowish pixels in the place Defendant describes are not sufficient for the Court to say as a matter of law that the image shows a cone outside the store entrance.



(Dkt. No. 11-1 at 5 (zoomed in)).

Defendant's employees are aware that winter conditions can lead to customers tracking moisture into the store on their feet, so store staff take extra precautions in such circumstances. (Dkt. Nos. 14-16 at 11, 14-17 at 23.) Staff do not take these precautions, however, just for rain or for a slush mix—only for snow. (Dkt. No. 14-17 at 23–24.)

Plaintiffs filed this case in state court in December 2020, asserting a single negligence claim. (Dkt. No. 2.) Defendant removed to this Court in May 2021, after receiving a discovery response indicating that Plaintiffs seek more than $75,000 in damages. (Dkt. No. 1 at 2.)

## II. DISCUSSION

### A. Discovery Disputes

The parties' briefing presents various discovery disputes: Defendant initially sought an adverse inference based on Plaintiff's apparent spoliation of the boots she wore during her fall; but the boots were later found, and Defendant withdrew its spoliation argument. (Dkt. Nos. 9 at 4–5; 15 at 2; 17 at 10.) The Court considers the matter of the boots to be resolved.

Plaintiff also asserts that discovery remains outstanding on several key issues. (Dkt. No. 14 at 10–11). However, she does not formally request a continuance or deferral under Rule 56(d), nor does she submit an affidavit or declaration from her counsel that would satisfy its requirements for a continuance. Accordingly, the Court will decide Defendant's motion.

### B. Legal Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views facts in the light most favorable to the nonmoving party and resolves ambiguity in that party's favor, but it must not make credibility determinations or weigh evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986); *Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994). Even if the material facts are largely undisputed, summary judgment may still be improper if "the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). The moving party has the initial burden to show the lack of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that party succeeds, the burden shifts to the nonmoving party to demonstrate there is an issue for trial. *See id.* at 323–24.

### C. Analysis

A negligence claim requires a plaintiff to show that the defendant breached a duty it owed to her and that she suffered an injury of which the breach was the proximate cause. *See Johnson v. Liquor & Cannabis Bd.*, 486 P.3d 125, 130–31 (Wash. 2021). In a slip-and-fall

premises liability case, this requires the plaintiff to establish that the property owner had actual or constructive notice of a dangerous condition that injured the plaintiff. *Id.* at 130. Even without evidence of actual or constructive notice, a plaintiff can establish duty and breach if "the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable." *Pimentel v. Roundup Co.*, 666 P.2d 888, 893 (Wash. 1983). The Washington Supreme Court has suggested that this "foreseeability exception" applies in cases involving tracked-in rain or snow: A plaintiff need not show that a defendant "knew of the specific puddle that caused the accident; rather, defendant's knowledge of the floor's tendency to get slippery when wet, coupled with the knowledge of the wet weather conditions on the day of the fall, made the specific condition reasonably foreseeable." *Iwai v. State Emp't Sec. Dep't*, 915 P.2d 1089, 1097 (Wash. 1996) (citing Wyoming and Mississippi court decisions).

      Defendant argues that summary judgment is proper because Plaintiff presents no evidence that there was a dangerous condition that proximately caused her fall. (Dkt. No. 9 at 5–7.) Defendant argues that there was nothing on the floor where Plaintiff slipped when she stepped there, that any wetness was tracked in by Plaintiff herself; per Defendant, the real culprit was the "unusual boots" Plaintiff wore, which had a "fabric or textile sole." (Dkt. No. 9 at 2 (photo of boot sole), 6–7.) These arguments fail. For starters, it is impossible for the Court to determine from the images provided what Plaintiff's boot soles are made of—whether felt, suede, or heavily worn rubber—or how much traction they did or did not provide. Similarly, the image resolution of the parties' photo evidence is too low for the Court to determine whether there was any moisture on the floor before Plaintiff stepped on it. (*compare* Dkt. No. 14-14 at 2 (post-fall picture showing dirt on floor with no visible liquid), *with* Dkt. No. 14-4 at 2 (pre-fall photo showing clean floor with no visible liquid).) Moreover, the floor was highly polished; conditions that day were wet, snowy, or slushy; and Defendant's personnel knew that the floor could become slippery when wet and had practices in place to address that risk. (Dkt. Nos. 11-1

at 1–4; 14-16 at 12–13; 14-17 at 11, 23–24; 15 at 2.)

Even if the floor was dry before Plaintiff took that first step, *Pimentel*'s foreseeability rule means that Plaintiff tracking in the very moisture that caused her fall may not preclude liability (although, as Plaintiff points out, her own negligence could potentially reduce recovery under Washington's comparative fault regime). (*See* Dkt. No. 14 at 8); Wash. Rev. Code §§ 4.22.005, 4.22.070.

Moreover, there are numerous conflicts in the record from which a jury could reasonably find the existence of a dangerous condition that caused, or that combined with Plaintiff's footwear to cause, her alleged injury. For example, although the record suggests that cones were "always" set up outside the store when it rained, a factfinder could reasonably view the photographic evidence as showing that there were no cones. (*Compare* Dkt. No. 14-16 at 10 (courtesy clerks "always" set cones if it is raining), *with* Dkt. No. 11-1 at 5 (video still).)

Similarly, it is undisputed that there were no warning cones inside the store, and there is a factual issue about whether conditions were such that Defendant's employees should have placed warning cones inside the store if they had been following their usual procedures. PIC Diana Greenough testified that the standard practice is to place cones inside the store if there are one to three inches of accumulated snow or "if it's snowing . . . or . . . if there is a lot of snow being brought in or if it's raining heavily." (Dkt. No. 14-16 at 10–11.) Plaintiff's evidence suggests that there was falling snow and up to two inches of snow and slush in the store parking lot. (*See, e.g.,* Dkt. Nos. 10-3 at 7; 15 at 1–2; 16 at 1.) Ms. Greenough's deposition testimony does not refute this. (Dkt. No. 14-16 at 12–13). There is thus an issue of material fact about whether Defendant departed from its usual practice of placing warning markers inside the store for wintry conditions. There is also an issue of material fact about whether moisture tracked onto the foyer carpet by other patrons or the highly polished floor surface played a role in Plaintiff's injury. (*See* Dkt. Nos. 11-1 at 1–4; 14-1 at 2; 14-3 at 2; 14-7 at 2; 14-8 at 2; 15 at 2.)

In short, this case hinges on issues of foreseeability and causation, and some of the most

probative evidence consists of imagery that is open to interpretation. As such, it is not amenable to summary judgment.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 9) is DENIED.

DATED this 2nd day of December 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE